**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

United States of America,

               Plaintiff,

v.

Patrick Franklin Martin,

               Defendant.

No. CR-17-00328-TUC-CKJ (BGM)

**REPORT AND RECOMMENDATION**

Currently pending before the Court is Defendant Patrick Franklin Martin's Motion to Suppress (Doc. 23). The Government has filed its response and Defendant replied. Govt.'s Response to Def.'s Mot. to Suppress (Doc. 31); Def.'s Reply (Doc. 36). Defendant is charged with two (2) counts of transportation of illegal aliens for profit and one (1) count of conspiracy to transport illegal aliens for profit, all in violation of Title 8, United States Code, Section 1324. Indictment (Doc. 15) at 1–2. Defendant Patrick Franklin Martin seeks suppression of all evidence obtained as a result of an allegedly faulty investigatory stop. *See* Def.'s Mot. to Suppress (Doc. 23).

Pursuant to LRCrim. 5.1, this matter came before Magistrate Judge Macdonald for an evidentiary hearing and a report and recommendation. On August 11, 2017, an

evidentiary hearing was held before Magistrate Judge Macdonald regarding the motion. Minute Entry 8/11/2017 (Doc. 37). On August 18, 2017, the final transcripts were received and this matter became ripe for adjudication. The Magistrate Judge recommends that the District Court, after its independent review, deny Defendant's motion.

## I.   FACTUAL BACKGROUND

On February 5, 2017, United States Border Patrol Agent Gregory Sprintz was working at the Sonoita Border Patrol station. Hr'g Tr. 8/11/2017 (Doc. 41) at 5:13–16, 9:18–21. Agent Sprintz has been employed with Border Patrol for eight (8) years. *Id.* at 5:17–18. His current assignment is at the Sonoita Border Patrol station. *Id.* at 5:3–16. Aside from a brief assignment in Ajo, Agent Sprintz has been stationed in Sonoita for his entire tenure. *Id.* at 6:4–8. In addition to his initial Border Patrol training, Agent Sprintz has continued to receive on-the-job or regular training, including particular smuggling tactics used in southern Arizona. *Id.* at 6:9–7:23.

### A.   *The Patagonia Area*

At approximately 9:00 a.m. on February 5, 2017, Agent Sprintz went out to Patagonia, Arizona to watch traffic. Hr'g Tr. 8/11/2017 (Doc. 41) at 9:18–10:2. Agent Sprintz did a quick drive through town, and then parked at the Patagonia post office, located at Taylor Avenue and Highway 82. *Id.* at 10:4–12:25. Agent Sprintz testified that he was parked facing slightly southwest, where he could observe the traffic in both directions. *Id.* at 13:1–6. Agent Sprintz further explained that the location is very

slightly elevated, which allowed him to see traffic that comes from the south on Highway 82, as well as all the roads in Patagonia that feed onto Highway 82. *Id.* at 13:7–20. As such, this location allowed Agent Sprintz to distinguish between people coming from Nogales or someplace south and those coming from Patagonia. *Id.* Agent Sprintz also testified that he is very familiar with Patagonia and the surrounding area, because he has been stationed there so long. *Id.* at 13:20–14:3.

Agent Sprintz described State Route 82 as a rural, two-lane highway connecting Nogales to the southwest and Sonoita and Tombstone to the northeast. Hr'g Tr. 8/11/2017 (Doc. 41) 14:4–15. Agent Sprintz further described Patagonia to be approximately ten (10) to fifteen (15) miles from the United States-Mexico international border. *Id.* at 15:25–16:3. Agent Sprintz testified that the closest border patrol checkpoint to Patagonia is located on State Route 83, just before the Las Cienegas park ends. *Id.* at 16:4–15. Agent Sprintz further testified that he is familiar with the traffic patterns along State Route 82, and that Patagonia receives some traffic coming from the border. *Id.* at 16:16–25. Agent Sprintz also testified that he was familiar with local traffic in this area, and would see cars that he recognized every day. *Id.* at 30:17–21.

Agent Sprintz testified that prior to the February 2017 incident he had been involved with smuggling apprehensions in this area along State Route 82. Hr'g Tr. 8/11/2017 (Doc. 41) at 17:11–18. Agent Sprintz further testified that based upon his training and experience smuggling along this route is moderately to very common. *Id.* at 17:19–18:6. Agent Sprintz also testified that Border Patrol apprehends a fair number of smugglers, and these individuals have indicated that there are a lot of incidents that are

not apprehended. *Id.* 18:9–13.

### B. The Stop

At approximately 10:50 a.m., Agent Sprintz saw an early 2000s model Chevrolet Cavalier driving northeast on State Route 82. Hr'g Tr. 8/11/2017 (Doc. 41) at 18:17–19:1, 66:21–67:1. Agent Sprintz testified that Defendant Patrick Franklin Martin was the sole, visible occupant. *Id.* at 19:2–9, 67:8–14. Agent Sprintz further testified that the vehicle's make and model drew his attention, because Border Patrol had recently seized a nearly identical vehicle that had been smuggling aliens. *Id.* at 20:11–15. Agent Sprintz went on to explain why this was important. Agent Sprintz testified that he observed a silver-gold metallic Saturn coupe parked in the vehicle seizure area when he arrived at work that day. *Id.* at 20:19–25, 23:14–20. Agent Sprintz further testified that he asked about the vehicle, and then a slide regarding the same was presented during muster—the start-of-shift meeting during which assignments are given and other intelligence is disseminated. *Id.* at 20:19–21:10.

Agent Sprintz also testified that when the photograph of the silver-gold Saturn was shown during muster, agents were informed that three undocumented aliens were discovered in the trunk after the vehicle was stopped. Hr'g Tr. 8/11/2017 (Doc. 41) at 23:21–24:18. Agent Sprintz testified that the Saturn shown during muster looked nearly identical to the Chevrolet Cavalier that he observed on February 5, 2017. *Id.* at 24:22–25:4. Agent Sprintz further testified that a second stop involving a silver-gold, metallic, two-door vehicle was also described during muster around the time of the stop currently at issue. *Id.* at 25:5–7, 26:4–24. Agent Sprintz testified that the second vehicle was a

- 4 -

2003 Hyundai Accent, which had been involved in another alien smuggling event after the Saturn had been seized, and which also was very similar in appearance to the vehicle in the instant case. *Id.* at 26:18–27:4, 29:7–14. Agent Sprintz further testified that he had spoken with the agent that apprehended the Hyundai, and was informed that the stop occurred on February 1st and the vehicle had been traveling north on State Route 83. *Id.* at 27:5–28:23. Agent Sprintz also testified that he later learned that the vehicle seized on State Route 83, was a different vehicle from that shown during muster; however, on February 5, 2017 he believed it to be the same. Hr'g Tr. 8/11/2017 (Doc. 41) at 28:4–29:4.

Agent Sprintz testified that agents had been advised that the small, metallic colored, coupes where the current strategy being used to smuggle aliens in the vehicle trunks. *Id.* at 29:15–30:2. Agent Sprintz explained that typically the transnational criminal organizations will use a similar type of vehicle for smuggling aliens or narcotics for period of time, until either Border Patrol had apprehended enough of them or the organization ran out of similar vehicles, at which point they will switch to a different vehicle type. *Id.* at 30:3–13, 57:16–58:13. Agent Sprintz further explained that he had learned about this strategy as part of his training, as well as from personal observation. *Id.*

Agent Sprintz testified that he did not recognize the Chevrolet Cavalier as belonging to a local, nor did he recognize the driver. *Id.* at 30:22–31:1. Agent Sprintz further testified that as the Cavalier passed his position, he observed the driver, who appeared to be glancing around, they made very brief eye contact, and the driver then

moved his hands into the 10 and 2 positions and sat up straight. Hr'g Tr. 8/11/2017 (Doc. 41) at 31:2–10, 45:14–47:18. Agent Sprintz interpreted the driver's actions as nervous behavior. *Id.* at 33:9–19. Agent Sprintz also testified that the rear of the vehicle appeared significantly depressed, to the point that the front of the vehicle was elevated. *Id.* at 31:20–32:14. Agent Sprintz testified that on the date in question, the State Route 83 checkpoint to the north was closed, and this generally results in an increase in smuggling activities. *Id.* at 32:15–33:8. Agent Sprintz noted that he has personally observed this pattern, as well as been trained regarding the same. *Id.* at 33:5–8.

Agent Sprintz testified that in light of the driver's apparent nervousness, and the weight in the back of the vehicle, he pulled out and followed the Cavalier. Hr'g Tr. 8/11/2017 (Doc. 41) at 33:12–21. Agent Sprintz further testified that once he was behind the Cavalier, the driver accelerated to between 70 and 75 miles per hour, during which time Agent Sprintz paced the vehicle in order to run a license plate records check. *Id.* at 33:22–34:9. Agent Sprintz also testified that once he paced the vehicle, the driver slowed back down to 55 miles per hour, the posted speed limit, and swerved somewhat. *Id.* Agent Sprintz noted that the swerving suggested that the driver was concerned about Agent Sprintz's presence behind him, and was looking at him in the rearview mirror. *Id.*

Agent Sprintz phoned in the license plate to the sector radio, and was informed that the license plate was not valid for highway use and was for credit only on a similar vehicle to the one that he was following, registered to two (2) women out of Tucson. *Id.* at 34:10–23, 53:7–22. Agent Sprintz explained that when a registration is not valid for highway use, it means the vehicle has been sold and the registration has been canceled or

- 6 -

suspended. Hr'g Tr. 8/11/2017 (Doc. 41) at 34:24–35:4. Agent Sprintz further explained that when the license plate is for credit only, it indicates the vehicle was sold—the seller keeps the license plate and it is for credit only. *Id.* at 34:24–35:4, 53:15–22, 54:3–55:12. In such a circumstance, the registration is not valid. *Id.* at 35:5–7. Agent Sprintz testified that based on his training and experience, and invalid registration suggests an increased likelihood that the vehicle is involved in smuggling. *Id.* at 35:8–16. Agent Sprintz explained that someone will purchase the vehicles and then either sell them or list them as sold, in order to gather up several vehicles and use them in smuggling, and disclaim any further knowledge in the event the vehicle is stopped. Hr'g Tr. 8/11/2017 (Doc. 41) at 35:17–36:1.

Agent Sprintz testified that as he was driving behind the Chevrolet Cavalier, it continued to appear heavily loaded, because of how much the trunk was depressed, as well as any time the vehicle hit a rough spot in the road the rear end would bounce. *Id.* at 36:2–19. Agent Sprintz indicated that there was nothing visible in the back seat to account for the amount of weight that the vehicle appeared to be carrying. *Id.* After approximately eight (8) or nine (9) minutes after Agent Sprintz pulled out behind the vehicle, he decided to make a stop. *Id.* at 36:20–25.

Accordingly, Agent Sprintz executed a stop at approximately halfway between mile markers 26 and 27 on State Route 82, and the vehicle's driver gave him a Colorado state identification bearing the name Patrick Franklin Martin. *Id.* at 37:18–22, 38:7–19. At some point during the stop, Agent Sprintz opened the trunk, and discovered two (2) undocumented aliens inside. Hr'g Tr. 8/11/2017 (Doc. 41) at 37:23–38:2, 50:11–15.

- 7 -

Agent Sprintz testified that he did not take photographs of either the individuals or vehicle, while the people were still in the trunk, because at that time he understood Border Patrol's policy prohibited photographing aliens while they were still in the trunk, and because they were on the side of the highway, and he had safety concerns regarding leaving the individuals in the vehicle trunk. *Id.* at 47:24–49:15. Agent Sprintz further testified that he is now aware that he previously misunderstood Border Patrol's policy regarding photographing individuals. *Id.* at 49:10–50:4. Agent Sprintz also testified that the two individuals were approximately 150 pounds apiece, or 300 pounds total. *Id.* at 50:16–51:15.

## II.   ANALYSIS

Defendant seeks suppression of all evidence in this case, asserting that "the stop of the vehicle cannot be supported by the law and that the agent's actions violated Mr. Martin's Fourth Amendment rights." Def.'s Mot. to Suppress (Doc. 23) at 6.

### A.  Search and Seizure—In General

"The Fourth Amendment prohibits 'unreasonable searches and seizures' by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744, 750, 151 L.Ed.2d 740 (2002) (citing *Terry v. Ohio*, 392 U.S. 1, 9, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981)). For the police to conduct a valid stop, they must "have a reasonable suspicion supported by articulable facts that criminal activity may be afoot." *United*

*States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989) (internal quotes and citation omitted). "[T]he level of suspicion required for a *Terry* stop[, however,] is obviously less demanding than that for probable cause." *Id.* at 8, 109 S.Ct. at 1585 (internal citations omitted). "Officers on roving border patrols . . . may conduct 'brief investigatory stops' without violating the Fourth Amendment 'if the officer's action is supported by reasonable suspicion to believe that criminal activity may be afoot.'" *United States v. Valdes-Vega*, 738 F.3d 1074, 1078 (9th Cir. 2013) (en banc) (citations omitted).

### B. Reasonable Suspicion

"Reasonable suspicion is defined as 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" *Id.* (quoting *United States v. Cotterman*, 709 F.3d 952, 968 (9th Cir. 2013) (en banc)). "The reasonable-suspicion standard is not a particularly high threshold to reach." *Valdes-Vega*, 738 F.3d at 1078. Furthermore, although "a mere hunch is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *Id.* (quoting *Arvizu*, 534 U.S. at 274, 122 S.Ct. 744) (citations and internal quotation marks omitted).

When making a reasonable-suspicion determination, the reviewing court "must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *Arvizu*, 534 U.S. at 273 (citations omitted); *see also United States. v. Alvarez*, 899 F.2d 833, 836 (9th Cir. 1990). In so doing, officers are allowed "to draw on their own experience and

- 9 -

specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *Id.* at 273, 122 S.Ct. at 750-51. (citations omitted); *see also Valdes-Vega*, 738 F.3d at 1078. Moreover, what may seem to be innocuous conduct when viewed in isolation may be appropriately considered when considering the totality of the circumstances; thus, it is inappropriate to view factors in isolation and to give no weight to factors which may have an innocent explanation. *Arvizu*, 534 U.S. at 273-75, 122 S.Ct. at 750-51; *see also Cotterman*, 709 F.3d at 970 ("It is not our province to nitpick the factors in isolation but instead to view them in the totality of the circumstances."). Furthermore, "A determination that reasonable suspicion exists . . . need not rule out the possibility of innocent conduct." *Valdes-Vega*, 738 F.3d at 1078-79 (citing *Arvizu*, 534 U.S. at 277) (alterations in original).

"In the context of border patrol stops, the totality of the circumstances may include characteristics of the area, proximity to the border, usual patterns of traffic and time of day, previous alien or drug smuggling in the area, behavior of the driver, appearance or behavior of passengers, and the model and appearance of the vehicle." *Valdes-Vega*, 738 F.3d at 1079 (citing *United States v. Bignoni-Ponce*, 422 U.S. 873, 884-85, 95 S.Ct. 2574, 45 L.Ed.2d 607(1975)). "Not all of these factors must be present or highly probative in every case to justify reasonable suspicion[,] . . . [a]nd the facts must be filtered through the lens of the agents' training and experience." *Valdes-Vega*, 738 F.3d at 1079 (citations omitted).

Here, Agent Sprintz is an eight (8) year veteran of Border Patrol. Hr'g Tr.

8/11/2017 (Doc. 41) at 5:17–18. Agent Sprintz testified that the vehicle fit the description of other vehicles involved in smuggling activity around the time of the incident in this case, and explained how smugglers will use a similar type of vehicle for a period time. *Id.* at 20:11–15, 23:14–25:4, 26:18–27:4, 29:7–14, 29:15–30:13, 57:16–58:13. Agent Sprintz also testified that he did not recognize the vehicle or the driver. *Id.* at 30:22–31:1. Agent Sprintz interpreted the driver's change in posture and associated behavior upon seeing Agent Sprintz as nervousness. *Id.* at 31:2–10, 45:14–47:18. The Chevrolet Cavalier then accelerated to approximately 70 to 75 miles per hour after Agent Sprintz pulled out behind it, and it appeared to be heavily loaded. *Id.* at 31:20–32:14, 33:22–34:9, 36:2–19. Agent Sprintz thought that the driver was watching him in the rearview mirror as Agent Sprintz ran his license plate. Hr'g Tr. 8/11/2017 (Doc. 41) at 33:22–34:9. The license plate was not valid for highway use and for credit only, indicating that the vehicle had been sold, but the license plate not removed as it should have been. *Id.* at 33:22–35:7, 53:15–22, 54:3–55:12. Furthermore, the State Route 83 checkpoint was closed. *Id.* at 32:15–33:8.

The Court finds Agent Sprintz's testimony credible. Furthermore, based upon the totality of the circumstances, there was reasonable suspicion for him to stop the vehicle. The vehicle fit the description of a trend of vehicles being used for smuggling; the rear of the vehicle appeared loaded down; the registration was invalid; the State Route 83 checkpoint was closed which was known to result in an increase of narcotics and human smuggling; the vehicle traveled at an excessive speed when Agent Sprintz initially pulled out behind it; and the driver's apparent nervousness when Agent Sprintz first saw him, as

- 11 -

well as when Agent Sprintz was driving behind the vehicle; coupled with Agent Sprintz's years of experience support a finding of reasonable suspicion. As such, Agent Sprintz provided specific articulable facts to suspect criminal activity sufficient to support reasonable suspicion justifying the stop.

## III.   CONCLUSION

The Court finds that based upon the totality of the circumstances, Agent Sprintz had reasonable suspicion to stop Mr. Martin's vehicle. As such, any evidence obtained as a result of that stop should not be suppressed.

## IV.   RECOMMENDATION

For the foregoing reasons, the Magistrate Judge recommends that the District Judge DENY Defendant Patrick Franklin Martin's Motion to Suppress (Doc. 23).

Any written objections to this Report and Recommendation shall be filed and served **on or before October 18, 2017**. Any response to another party's objections shall be filed and served **on or before October 27, 2017**. No reply shall be filed unless leave is granted from the District Court. If objections are filed, the parties should use the following case number: **CR-17-328-TUC-CKJ**.

. . .

. . .

. . .

. . .

- 12 -

Failure to file timely objections to any factual or legal determination of the Magistrate Judge in accordance with Fed. R. Crim. P. 59 may result in waiver of the right of review.

Dated this 6th day of October, 2017.

Honorable Bruce G. Macdonald
United States Magistrate Judge